## Simon v. Neptune Mfg. Co., Inc.

Feb. 4, 1941.

Edward W. Bensinger, Jr., and Samuels & Samuels for appellant. Morris & Garlove for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

On April 15, 1936, the appellant, who was plaintiff below, and appellee, defendant below, entered into the following contract:

"It is agreed between the Neptune Mfg. Co. of Louisville, Kentucky, and Mr. Al Simon, of Chicago, Illinois, that he is to represent The Neptune Mfg. Co. in the States of Illinois, Iowa, Nebraska, and such additional territory or special accounts in territory not now covered by us.

"It is agreed that Mr. Simon is to receive 8% for all sales against which we are to advance as follows: $275.00 a month, payable semi-monthly, on the 15th and 30th respectively. Beginning July 1st, 1936, the drawing account is to be $300.00 per month. It is also agreed that The Neptune Mfg. Co. will take care of monthly payments due for the payment of a car, not in excess of $35.00 per month, for the life of this contract, or until the severance of connections with Mr. Simon.

"In addition to the above commission Mr. Simon is to receive as a bonus $300.00 in cash, if the sales run to $75,000.00 within the year of this contract.

"It is agreed that all mail orders are to be credited to his sales. All orders are subject to acceptance by the Neptune Mfg. Company.

"The Neptune Mfg. Co. also agrees to pay traveling expenses while on the road soliciting business for us.

"Statement of all shipments, and returns, is to be furnished by the 15th of each month.

"This contract to become effective for one year, as of May 1st, 1936, and is agreed to by both parties as per signature below.

"(Signed)

"Al Simon              The Neptune Mfg. Co.
"Al Simon              Ludwig Frank, Prest.
                       "Ludwig Frank."

On April 10, 1937, by a writing signed by the parties, the above contract was extended for one year, or to April 30, 1938.

In September, 1938, the plaintiff instituted this action in the Jefferson circuit court alleging in substance for his cause of action that by the terms of the contract defendant promised and agreed to pay him a fixed drawing account or compensation of $275 per month for the first two months, namely, May and June, 1936, and $300 a month thereafter, regardless of commissions stipulated in the contract, and to pay him the further sum of $300 per year bonus in the event his sales totaled $75,000 per year during the life of the contract, and to pay the further sum of $35 per month on his automobile. He further alleged that defendant failed and refused to pay him his salary or drawing account of $300 for the months of March and April, 1938, and further, that his sales for the year May 1, 1936, to April 30, 1937, exceeded $75,000 and defendant had failed and refused to pay him the $300 bonus for that year and refused to pay the $35 per month on his automobile for the months of March and April, 1938, aggregating the sum of $970, and prayed judgment for that amount. Defendant filed answer and counterclaim denying that plaintiff's sales amounted to $75,000 any one year and, therefore, it was not indebted to him in any amount as a bonus or otherwise on that item, and further denied that it was indebted to appellant in any sum for salary or drawing account, or for payments on his automobile or any sum or amount under the terms of said contract.

For its counterclaim defendant alleged that because of certain conduct on the part of plaintiff, it became necessary for defendant to discharge him and terminate his services, which it did on about February 12, 1938, and because of plaintiff's manner of conducting its business it had been damaged in the sum of $1,007 and prayed to recover of plaintiff that amount. However, since the counterclaim is not involved in this appeal it becomes unnecessary to further discuss that phase of the case. It is conceded that plaintiff failed to show by the evidence that he is entitled to the bonus.

By subsequent pleadings the issues were made and a jury empaneled to try the issues and at the close of the evidence the court construed the contract to mean that the plaintiff was to receive 8 per cent. commission on sales, and not a fixed salary or drawing account of $300 or other amount per month, and peremptorily instructed the jury to find for defendant on plaintiff's

claim against it, and also to find for the plaintiff on defendant's counterclaim against him, and entered judgment dismissing both the plaintiff's petition and defendant's counterclaim. Plaintiff has appealed from the judgment dismissing his petition but no cross-appeal is prosecuted by defendant on its counterclaim.

The question involved is the construction of the contract which on its face is more or less ambiguous. It is stipulated that plaintiff was to receive 8 per cent. (commission) for all sales against which the drawing account was to be advanced but it is not clear whether or not the drawing account of $300 per month was to continue and be paid in any event, regardless of commissions, during the life of the contract.

It is conceded that defendant had the right to discontinue plaintiff's services as a salesman, which it did in February, 1938, hence, the decisive point is whether or not under the terms of the contract plaintiff is entitled to receive the monthly drawing account or salary for the months of March and April, 1938.

In order to clarify any ambiguity, if any appears, on the face of the contract and to determine whether the contract was to continue as to the drawing account after plaintiff's services as a salesman were terminated, we look to the evidence and subsequent conduct of the parties, particularly the defendant.

Plaintiff filed with his evidence a number of exhibits in the nature of statements, letters, etc. One dated February 3, 1937, relative to the account for the previous month refers to the $300 or $150 semi-monthly payments as "salary." An annual statement headed "Drawings for 1937" contains the language "Salary $3600." Also in a postscript to a letter dated May 16, 1937, Mr. Ludwig Frank, president and manager of defendant company, uses this language, "Cks herewith expense & salary checks." In another letter dated February 23, 1938, in reply to a certain letter written by plaintiff to defendant which was received after February 12, 1938, Mr. Frank wrote, "You are assuming a situation which does not exist, as we at no time indicated in a letter that we would cancel the existing contract before its termination. If we made a bad bargain we are willing to abide by it. * * * You have nothing to fear about not getting the mony that is due you." In another letter

dated February 26, 1938, Mr. Frank said in part, "We wish to give notice now that the existing contract is to *terminate with the expiration of same.* Monies due will be sent at regular intervals as in the past, provided the samples are returned at once." It will be noted that the contract terminated April 30, 1938, and monies paid in the past was $150 semi-monthly or $300 per month. In a letter dated March 3, 1938, Frank said, "Furthermore, we have asked you to return our samples and you continue to refuse to do so, notwithstanding the fact that we have told you we intend to keep faith with the agreement we have with you. * * * Your drawing account check is being held subject to getting the samples." In a letter dated March 5, 1938, Mr. Frank said:

> "For a month now, we have been asking you to return our samples, swatches, etc., and in our letter of February 26th, which was sent Special Delivery and reached you on Sunday, February 27th, we gave you notice of our intention to terminate your services now but that monies due you would be *paid for the life of the existing* agreement. (Our italics.) We quote from our letter of February 23rd: 'You have nothing to fear about not getting the money that is due you.'"

Mr. Frank was called in plaintiff's behalf. In answer to a question concerning the contract, Mr. Frank said:

> "Mr. Simon as well as I—I wrote that contract. I mean by that, I wrote it. I am a novice at it. My counsel, Mr. Morris, has already told me hereafter let an attorney make a couple of dollars and let him draw the contracts, you understand. He told me that. I was a novice, but between Mr. Simons and myself, we fully understood that eight per cent commission meant that everything drawn—everything in cash drawn against that account, against the eight per cent, is to be charged to the eight per cent."

He also explained that the contract was on the basis of a year's commission and not monthly. He said that defendant did not expect plaintiff's commission on sales to amount to $300 each and every month. He said that defendant was a manufacturer of top coats and during the late spring and early summer months they expected

but few sales but that they allowed plaintiff a drawing account of $300 per month for living expenses during the season of the year that his commissions would not produce a sufficient sum for him to live on. He further said that during the late summer, fall and winter months they expected plaintiff's sales on the commission basis to produce not only his drawing account of $300 for the current months but also a sum in excess of that amount sufficient to take care of the past months when commissions did not equal the advances or drawing account. Frank was asked to explain what he meant when he wrote Mr. Simon that he had nothing to fear about getting what was due him. He replied, "I can explain what I meant by that. I meant if there is something coming to you, you are going to get it. What else could I mean by that?"

Mr. Frank was also asked about the use of the word "salary" referred to in the statements and correspondence and he said in substance that he just happened to use the word "salary" but did not intend to use it in the technical or in the usual sense of the word; that when he set up his books or accounts he incidentally used the word "salary" to distinguish the fixed drawing account from the traveling expenses. This explanation is more or less plausible. Mr. Frank did not explain, however, what he meant when he said in the various letters mentioned above that the existing contract would terminate with the expiration of same; monies due will be sent at regular intervals as in the past and they intended to keep faith with the agreement; that notwithstanding he had given plaintiff notice of his intention to terminate his services, the money due would be paid for the life of the existing agreement.

The defendant, by its representative, Mr. Frank, made it very plain to plaintiff in February, 1938, that his services as a salesman were discontinued and the contract terminated in that respect, but notwithstanding the termination of that phase of the contract, Mr. Frank repeatedly wrote the plaintiff and emphasized the fact that the contract would not be terminated as to the salary or drawing account and that they had no intention of doing so; that he would get his money during the life of the contract as he had in the past. Evidently defendant had reference to the advances or drawing account phase of the contract.

We are unable to conceive of any other logical construction to be placed upon the positive language contained in the communication. It is obvious that Mr. Frank drew a distinction between the two phases of the contract, namely, plaintiff's services as a salesman which were terminated February, 1938, and the monthly drawing account phase which was to terminate April 30, 1938. As already stated, conceding that the contract was ambiguous on its face, it is obvious that defendant treated the advances or drawing account as a fixed amount to be paid at the times and in the manner stated therein during the life of the contract.

Plaintiff cites us to the case of Lieberman v. Weil, 141 Wis. 635, 124 N. W. 262, insisting that it is authority for his position in the present case. It appears that the contract involved in that case and the one in the case at bar are indeed very similar, if not the same. It appears that the contract involved in the case, supra, provided for a commission on sales and also a salary account for a stipulated amount, and it was held that the salesman was entitled to draw the salary account and the provisions of the contract with reference to commissions was inoperative so long as the commissions on sales did not exceed the salary provided. See, also, Kane v. Auto Laks Mfg. Co., Sup. Ct. 172 N. Y. S: 275. Defendant attempts to distinguish the above cases from the contract involved in the present case, insisting that the terms of the contracts are not the same. Conceding, without deciding, that the contracts involved in those cases and the present one, are not precisely the same, yet, there is much in common between them and it is doubtful that any practical distinction can be drawn. If it be conceded, however, that those cases are distinguishable, yet it must not be overlooked that they were decided solely upon the face of the contract involved. Conceding, arguendo, that if this case was to be decided solely on the face of the contract, a different question would be present, yet, once defendant's letters and conduct is taken into consideration we find no avenue of escape from the conclusion that the contract should and must be construed to mean that plaintiff's drawing account was to be paid during the life of the contract, even subsequent to the severance of plaintiff's services as a salesman of defendant's merchandise.

And there is another well-established rule that

comes into play in favor of plaintiff, namely, that ambiguous and doubtful language appearing in a written instrument must be construed more strongly against the party who wrote it. Mr. Frank admits that he wrote the contract involved and says that he was a "novice at that business." He virtually conceded that the language employed might not be sufficiently clear.

It follows from what has been said that the court erred in failing to instruct the jury to find a verdict for the plaintiff in the sum of $600 representing plaintiff's advances or drawing account for the months of March and April, 1938. We do not think, however, that plaintiff is entitled to recover the payment sued for on his automobile. The automobile was used by plaintiff in connection with his services as a salesman for defendant which use ceased when the contract as salesman was terminated, February, 1938.

Wherefore the judgment is reversed and remanded for proceedings consistent with this opinion.